IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEOFFREY M. BANKS, | ) | CASE NO. 3:14-cv-01945 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| JASON BUNTING, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION**[1] |

On September 2, 2014, Petitioner Geoffrey M. Banks ("Petitioner" or "Banks"), acting

*pro se*, filed this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition").  Doc. 1.

Respondent filed a Return of Writ.  Doc. 5.  Banks filed a Traverse.  Doc. 17.  Respondent filed a

Reply.  Doc. 18.  Banks filed a Response to Respondent's Reply.[2]  Doc. 20.  In his Petition,

Banks challenges the constitutionality of his conviction and sentence in *State v. Banks*, Case No.

11-CR-0234 (Seneca County).  Doc. 1.  Following a jury trial, Banks was found guilty on three

counts of aggravated trafficking in drugs, with additional findings of bulk amount and in the

vicinity of a school.  Doc. 5-2, pp. 39-46.[3]  The trial court sentenced Banks to five years in

prison on each count to be served consecutively.  Doc. 5-2, pp. 47-53.

---

[1] This Report and Recommendation pertains to Doc. 1 (Petition for federal habeas relief) and Doc. 14 (Motion for Stay and Abeyance).

[2] Banks did not request leave of court to file his Response to Reply, i.e., sur-reply.  However, considering Banks's *pro se* status and there being no request to strike the filing, the undersigned has considered Banks's Response to Reply (Doc. 20) along with the other briefing.

[3] Page number references refer to the page number for the cited ECF Doc.

On June 25, 2015, Banks filed a Motion for Stay and Abeyance. Doc. 14. Respondent filed a Memorandum in Opposition to Motion to Stay (Doc. 16) and Banks filed a Reply (Doc. 19). Banks requests a stay and abeyance to allow him to return to state court to exhaust a *new* claim not included in his petition for federal habeas relief regarding electronic surveillance. Doc. 14. Bank contends that he only recently discovered this potential claim. Doc. 14. This Court previously considered and denied Banks's motion to dismiss his petition without prejudice to allow him to present an unexhausted issue regarding electronic surveillance to the state courts.[4] Doc. 12.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2. For the reasons set forth below, the undersigned recommends that the Court **DISMISS** Banks's federal habeas petition (Doc. 1) and **DENY** Banks's motion for stay and abeyance (Doc. 14).

## I.     Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Ohio Court of Appeals summarized the facts underlying Banks's conviction as follows:

> {¶ 3} The indictment arose from Banks' alleged sale of oxycodone to a confidential informant on three different occasions. Two of the counts were alleged to have occurred in Banks' house at 449 South Jefferson Street in Tiffin, Ohio while the other count was alleged to have occurred at 73 Melmore Street,

---

[4] On May 18, 2015, the undersigned issued an interim report and recommendation recommending denial of Banks's request to dismiss his petition without prejudice. Doc. 11. Banks filed no objection. On June 15, 2015, the Court adopted the interim report and recommendation and denied Banks's motion to dismiss his petition without prejudice. Doc. 12.

Tiffin, Ohio, which is a convenience store. The sales purportedly occurred on April 14, 2010, April 25, 2010, and May 6, 2010.

{¶ 4} The jury trial of this matter commenced on March 12, 2012 and ended on March 14, 2012. Detective Donald Joseph, of the Seneca County Sheriff's Office and the Metrich Drug Task Force, first testified as to his involvement in the controlled buys that led to the indictment. He indicated that on April 14, 2010, Craig Fell, a confidential informant, called Metrich and said that he could arrange the purchase of oxycodone drugs from Banks. Fell then traveled to the task force's office, where Detective Joseph and other members of the task force, pursuant to its protocols, searched Fell and his car for illegal drugs. The search produced no drugs. Detective Joseph also placed recording equipment on Fell, which allowed him to hear all of Fell's interactions.

{¶ 5} Detective Joseph testified that he set up surveillance outside of 449 South Jefferson Street that allowed him to observe Fell enter the residence. Once Fell was inside, Detective Joseph said that he heard Fell discuss the markings on the oxycodone pills with an unidentified male voice. Detective Joseph then observed Fell leave the residence and travel to another location where Fell handed over 34 pills of oxycodone to the task force. Detective Joseph also searched Fell for other contraband and found nothing.

{¶ 6} After discussing the events of April 14, 2010, Detective Joseph authenticated several of the State's exhibits, including the following:

> (1) A bag containing the pills that Fell turned over;
> (2) A document containing the results of chemical tests run on the pills;
> (3) The audio recordings of the controlled buy and telephone calls between Fell and Banks; and
> (4) The photograph line-up in which Fell identified Banks as the seller of the pills he purchased.

{¶ 7} Detective Joseph then testified that essentially the same process and events occurred on April 25, 2010. Detective Joseph observed Fell drive his car to 449 South Jefferson Street. Banks walked outside and met Fell at his car. Later, a car driven by Rachel Eckert arrived and both Fell and Banks walked to Eckert's car. Detective Joseph testified that he heard, via the surveillance equipment, the parties discuss the drug transaction. After the deal, Fell turned over 30 oxycodone pills to the task force. Detective Joseph authenticated the following exhibits regarding the April 25, 2010 buy:

> (1) A bag containing the pills that Fell turned over after the transaction;
> (2) A document containing the results of chemical tests run on the pills; and

(3) The audio recordings of the controlled buy and telephone calls between Fell and Banks.

{¶ 8} Additionally, Detective Joseph discussed the events of May 6, 2010. Again, essentially the same process and events occurred. Detective Joseph observed Fell meet Banks at his residence. While Fell was there, Detective Joseph heard Banks arrange for Fell to travel to a convenience store at 73 Melmore Street, which is across the street from Calvert Elementary School. The drug task force members maintained surveillance after Fell and Banks traveled to the convenience store. The members heard Banks and Fell discuss the price of the pills over the surveillance equipment. After this sale, Detective Joseph and the other drug task force members arrested Banks. During his search of Banks, Detective Joseph found the marked money that was issued to Fell for the purchase.

{¶ 9} Detective Joseph authenticated the following exhibits relating to the May 6, 2010 controlled buy:

(1) The money seized from Banks' pockets and the money issued to Fell for the controlled buy;
(2) A bag containing the pills that Fell turned over after the transaction;
(3) A document containing the results of the chemical tests run on the pills; and
(4) The audio recordings of the controlled buy and telephone calls between Fell and Banks.

{¶ 10} Finally, Detective Joseph testified to the distance between Calvert Elementary School and the locations where the controlled buys occurred. He stated that both Banks' house at 449 South Jefferson and the convenience store at 73 Melmore Street were within 1,000 feet of the school. Detective Joseph also indicated that the school was operating at the times of the controlled buys.

{¶ 11} On cross-examination, Detective Joseph admitted that he did not see the actual hand-to-hand transfer of the oxycodone pills and money during any of the controlled buys. He also admitted that Eckert was present at the April 14, 2010 and April 25, 2010 transactions since she was the supplier of the pills for Banks.

{¶ 12} In addition to Detective Joseph, several other police officers testified to their involvement in the three controlled buys. Their testimonies all were generally consistent with Detective Joseph's testimony.

{¶ 13} Seneca County Engineer Mark Zimmerman testified as to the distance between the locations of the purported drug sales and Calvert Elementary. He stated that he, along with other members of the Engineer's Office, surveyed the distances using GPS systems. As a result of the data collected, Engineer Zimmerman concluded that both Banks' residence at 449 South Jefferson Street and the convenience store at 73 Melmore Street were within 1,000 feet of the

school. Dominic Helmstetter, the principal of Calvert Elementary School, also testified that the school was open and operating on the dates of the alleged drug sales.

{¶ 14} Fell was a critical witness for the State. He testified that he was retained as a confidential informant by the Metrich Drug Task Force as part of a plea bargain in an unrelated case. In regard to the April 14, 2010 drug buy, Fell testified that Banks set the price for the pills and the meeting place for the deal. This testimony was confirmed when the State played the recordings of two phone calls between Banks and Fell discussing these matters. Fell then indicated that when he went to Banks' house for the buy, both Banks and Eckert were present. During the transaction, Fell said he gave the money to Banks, who turned it over to Eckert. Fell also testified that Banks physically handed the oxycodone over to him. Also, Banks kept one of the pills as a type of finder's fee. Finally, Fell authenticated the pills involved in this transaction as well as the photo line-up in which he identified Banks as the seller in the transaction.

{¶ 15} Fell then moved on to discussing the April 25, 2010 drug buy. Again, Fell testified that Banks set the price for the pills and the meeting place for the deal. This testimony was confirmed when the State played the recordings of two phone calls between Banks and Fell discussing these matters. Unlike the April 14, 2010 buy, this one did not occur inside of the house at 449 South Jefferson Street. Rather, when Fell arrived, Banks came out to meet Fell in his car. The two sat in the car and waited for Eckert to arrive.

{¶ 16} When Eckert arrived, she pulled her car in front of the house at 449 South Jefferson Street. Both Banks and Fell got out of Fell's car and went to Eckert's car, where the drug sale was closed. Fell testified that Banks counted the pills he received from Eckert and then handed them to Fell. Further, Fell indicated that he handed the money for the deal to Banks, who then turned it over to Eckert. Fell again authenticated the pills that were involved in this deal.

{¶ 17} Finally, Fell testified regarding the drug sale on May 6, 2010. Again, Banks set the price for the pills and the location of the buy. When Fell arrived at the residence at 449 South Jefferson Street, Banks came out and got into Fell's car. They drove to the convenience store at 73 Melmore Street. When they arrived, Fell parked outside the store and Banks handed over the oxycodone pills. After handing over the pills, Banks went into the store. Upon Banks' return to the car, Fell handed over the agreed amount of money for the pills, including a $10 finder's fee for Banks.

{¶ 18} Throughout the transaction, Fell was wearing audio recording equipment. The recording was played for the jury and Fell explained the recording in the following exchange:

> Q: Then there was some more discussion about the price of the pills, sounded like it was "kind of high" but then someone said,

5

"Well, I already told 'em I'd get 'em." Do you remember who said that?

A: [Banks].

Q: Do you know what he was talking about at that point?

A: Uhm, getting the pills from somebody.

Q: Okay. Then there are some more discussions about, there was an individual that said, "You run out, just call me. I can get them the next day. No more than $10 apiece. Eventually, they'll be seven fifty to $8 a piece." Do you remember that?

A: It was [Banks] and he was getting the price down for the [oxycodone pills].

Q: So he was offering to sell you [oxycodone] in the future?

A: Yes. Trial Tr., p. 293–94.

Fell also authenticated the pills involved in this deal.

{¶ 19} On cross-examination, Fell admitted Eckert was present during the first two deals and that that no pills or money exchanged hands until after Eckert arrived for the April 25, 2010 deal. However, Fell reiterated that Banks was always the person who handed over the drugs and who took the money from Fell.

{¶ 20} Barbara Hoover, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation ("BCI"), testified regarding the chemical tests she ran on the pills handed over by Banks during the April 14, 2010 and April 25, 2010 transactions. Hoover said that based on the tests she conducted, she found that both sets of pills from these transactions contained oxycodone. Shervonne Bufford, another BCI forensic scientist, testified as to the pills handed over by Banks during the May 6, 2010 transaction. She stated that based on the tests she conducted, she found that the pills contained oxycodone. Further, both Hoover and Bufford testified the amount of the oxycodone in each sample was several times greater than the normal prescribed amount.

{¶ 21} Eckert also testified regarding her involvement in the April 14, 2010 and April 25, 2010 controlled drug buys. On both occasions, she said that Banks called her to inquire about the availability of oxycodone pills. Eckert said that she could provide the pills and then met Banks at the 449 South Jefferson Street address. She confirmed that the first drug deal occurred inside the residence at the address and that the second one occurred by her car, which was parked outside of the residence. Eckert indicated that she took the oxycodone pills and gave them to Banks. She also testified that she saw Banks physically hand the pills to Fell who

6

in exchange handed over the money to Banks. Eckert stated that Banks then turned over the money to her.

{¶ 22} On cross-examination, Eckert admitted that the State reduced her punishment in another case in exchange for her cooperation in the prosecution of Banks. She also acknowledged her extensive involvement in the drug trade, which has resulted in several convictions.

{¶ 23} Banks moved for an acquittal pursuant to Crim.R. 29(A), but the trial court denied the motion. Banks offered no evidence in his defense. During the State's closing argument, the assistant prosecuting attorney played various segments of the audio recordings from the purported drug deals. After playing one segment, the assistant prosecuting attorney made the following statement:

> You hear the defendant telling the informant, "You got that money. I'll just grab it and go jump in that car over there," to go get the drugs to transfer them to the informant.
> It's pretty clear in this audio, one, the defendant is getting different drugs from different sources. He's talking all about these b[——] he's getting drugs from. Trial Tr., p. 493.

At that point, Banks' trial counsel objected. But, the trial court overruled it on the basis that the prosecutor's statements were argument, and not evidence.

*State v. Banks*, 2013 WL 684732, * 1-5 (Ohio App. Ct. Feb. 25, 2013); *see also* Doc. 5-2, pp.

188-197.

## II.     Procedural Background

**A.     State conviction**

In October 2011, the Seneca County Grand Jury indicted Banks on three counts of

aggravated trafficking in drugs in violation of O.R.C. § 2925.03(A)(1), (C)(1)(c).  Doc. 5-2, pp.

1-4.  Each count contained a specification relating to the amount of drugs and a specification that

the offense occurred in the vicinity of a school.  Doc. 5-2, pp. 1-4.  On November 7, 2011, the

trial court found Banks competent, explained Banks's rights to him, and Banks entered a plea of

not guilty.  Doc. 5-2, pp. 5-6.   Per Banks's request, on November 7, 2011, the State filed a Bill

of Particulars.  Doc. 5-2, pp. 7-8.  Banks filed a motion for proposed jury instructions (Doc. 5-2,

pp. 9-10) and the State filed proposed jury instructions and verdict forms (Doc. 5-2, pp. 11-38).

A jury trial commenced on March 12, 2012, and ended on March 14, 2012.  Doc. 5-2, pp. 45, 48.  The jury returned guilty verdicts on all three counts with the additional findings of bulk amount and in the vicinity of a school.  Doc. 5-2, pp. 39-44, 45-46.  A sentencing hearing was conducted on March 15, 2012.  Doc. 5-2, p. 47.  The trial court sentenced Banks to five years in prison on each count, to be served consecutively, for a total of 15 years.[5]  Doc. 5-2, pp. 47-53. The Judgment Entry of Sentence was filed with the Clerk on March 23, 2012.  Doc. 5-2, p. 47. In sentencing Banks, the trial court stated in part:

> The Court has considered the factors and presumptions under Revised Code Section 2929.13(D).
>
> After consideration of the factors under Revised Code Section 2929.12, the recommendation of the Prosecutor and defense attorney, the Court finds that a prison term is consistent with the purposes and principles of sentencing in Revised Code Section 2929.11 and that the shortest prison term will demean the seriousness of the defendant's conduct and will not adequately protect the public from future crime by this defendant or others.  The defendant is not eligible to an available community control sanction.
>
> The Court finds that consecutive sentences are necessary to protect the public from future crime or to punish the defendant and that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public.
>
> The Court further finds that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as any of the courses of conduct adequately reflects the seriousness of the defendant's conduct.
>
> The Court further finds that the defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant.

Doc. 5-2, pp. 48-49.

---

[5] The sentence imposed included other components, including an order that that Banks pay restitution to the Seneca County Drug Task Force METRICH Enforcement Unit in the amount of $635.00.  Doc. 5-2, p. 52.

**B.**      **Direct appeal**

On March 29, 2012, Banks, with new counsel, filed a notice of appeal with the Third

District Court of Appeals.  Doc. 5-2, pp. 54-61.  Bank filed his appellate brief on July 19, 2012,

(Doc. 5-2, pp. 62-144), and raised the following eight assignments of error:

1.  The trial court improperly sentenced the defendant when the trial court
    ordered consecutive sentences for each count of the indictment.

2.  The conviction in Count One was against the manifest weight of the
    evidence.

3.  The conviction in Count Two was against the manifest weight of the
    evidence.

4.  The conviction in Count Three was against the manifest weight of the
    evidence.

5.  The finding of aggravated circumstances in Count Two of the transaction
    occurring within 1000 feet of school is against the manifest weight of the
    evidence.

6.  The trial court erred when it failed to sustain the objection of Defendant
    Counsel when the Assistant Prosecuting Attorney made arguments about
    Appellant's involvement in other drug activities during closing arguments
    in violation of the Appellant's rights under the Fifth Amendment of the
    United States Constitution.

7.  Geoffrey Banks was deprived of his rights to effective assistance of
    counsel by his retained counsel, in contravention of the Sixth and
    Fourteenth Amendments to the United States Constitution, and Article
    One, Section Ten of the Ohio Constitution, which severely prejudiced the
    rights of Appellant and did not further the administration of justice.[6]

8.  During sentencing, the trial court stated that "As a result, the Court has
    looked at the factors and presumptions under Revised Code Section
    2929.13(D).  And after consideration of all factors, the court finds that a
    prison term is not only consistent but mandatory in this case, but is
    consistent with the purposes and principals of felony sentencing under

---

[6] Banks alleged that his trial counsel was ineffective for (1) not introducing evidence that Rachel Eckert was living with him at the time of the occurrence of the first two transactions; and (2) not continuing to object to the prosecutor's comments during closing arguments which Banks argued suggested other prior acts.  Doc. 5-2, pp. 80-82, 205-207.

> Revised Code Section 2929.11 . . ." (Sentencing Tr. P18-19) Said
> statement is in error and therefore the sentencing should be void.

Doc. 5-2, pp. 65-66.

On August 1, 2012, the State filed its brief.  Doc. 5-2, pp. 145-186.  On February 26,

2013, the Court of Appeals for the Third Appellate District overruled Banks's assignments of

error and affirmed the trial court's judgment.  Doc. 5-2, pp. 187-213.  However, the court of

appeals determined *sua sponte* that the trial court had incorrectly ordered Banks to pay restitution

to Metrich Drug Task Force because Metrich was not a victim under the statute authorizing a

trial court to order restitution.  Doc. 5-2, pp. 211-212.

On April 11, 2013, Banks, through new appellate counsel, filed a notice of appeal with

the Supreme Court of Ohio.  Doc. 5-2, pp. 214-215.  In his Memorandum in Support of

Jurisdiction (Doc. 5-2, pp. 216-269), Banks raised two propositions of law:

> 1. The testimony and evidence did not support a finding that the Defendant
>    was a major drug trafficker benefiting financially from the transactions
>    and deserving of the sentence imposed.
>
> 2. Ohio statutes support a sentence consistent with sentences imposed for
>    similar crimes committed by similar offenders which did not happen in
>    this instant case.

Doc. 5-2, pp. 221-224.  On May 10, 2013, the State filed its Memorandum in Opposition of

Jurisdiction.  Doc. 5-2, pp. 270-283.  On June 26, 2013, the Supreme Court of Ohio declined

jurisdiction of the appeal.  Doc. 5-2, p. 284.

On September 9, 2013, Banks, acting *pro se*, filed a notice of appeal and motion for

delayed appeal with the Supreme Court of Ohio.  Doc. 5-2, pp. 285-286, 287-320.  Banks argued

that his appellate counsel appeal was ineffective because appellate counsel representing him in

his original appeal to the Supreme Court of Ohio failed to preserve six of his eight assignments

of error.  Doc. 5-2, pp. 287-294.   He sought to raise the omitted six assignments of error

(assignments of error 3 through 8) in a delayed appeal to the Supreme Court of Ohio. Doc. 5-2, pp. 287-294.  On October 23, 2013, the Supreme Court of Ohio denied Banks's motion for a delayed appeal.  Doc. 5-2, p. 321.

## C.    Motion for correction of sentence

Also, on September 9, 2013, Banks, acting *pro se*, filed in the trial court a Motion for Correction of Sentence pursuant to R.C. 2941.25 and Motion for Evidentiary Hearing.  Doc. 5-3, pp. 1-8.  Banks argued that his offenses were allied offenses and the three counts should have been merged and the sentence imposed punished him multiple times for the same offense in violation of constitutional rights.  Doc. 5-3, pp. 1-8.  On September 12, 2013, the trial court denied Banks's motion.  Doc. 5-3, p. 9.

On October 3, 2013, Banks, acting *pro se*, filed a notice of appeal with the Third District Court of Appeals from the trial court's September 12, 2013, judgment entry.  Doc. 5-3, pp. 10-12.  On November 21, 2013, Banks filed his appellate brief (Doc. 5-3, pp. 13-30) raising three assignments of error:

> 1. Does the trial court have a mandatory duty under Ohio law R.C. 2941.24(A)(b) to conduct a hearing before sentencing the defendant to determine whether the defendant sentence imposed on count 1, 2, and 3 are allied offenses of similar import and failure to conduct such hearing created a manifest miscarriage of justice that rendered the trial court imposed sentence void crim r. 52(B) violation of the defendant United States constitutional rights amendments 5 and 14.
>
> 2. The trial court judgment entry of Sept. 12th 2013, is that judgment a final appealable order for the purpose of R.C. 2505.02 that would give the appellate court subject matter jurisdiction over the appellant case.
>
> 3. Did the trial court have subject matter jurisdiction to impose 15 year prison term upon the defendant for trafficking in drugs R.C. 2925.11 without first finding the defendant guilty of possession of drugs R.C. 2925.11 that the trial court imposed sentence void violation of the defendant United States constitutional right amendment 5, 6, and 14.

Doc. 5-3, p. 14.

On December 16, 2013, the State filed its brief.  Doc. 5-3, pp. 31-52.  On December 30, 2013, Banks filed a reply brief.  Doc. 5-3, pp. 53-61.  On April 21, 2014, the state court of appeals affirmed the trial court's denial of Banks's motion for correction of sentence and motion for evidentiary hearing. Doc. 5-3, pp. 62-71.  On April 29, 2014, Banks filed a motion for enlargement of time to file a motion for reconsideration pursuant to App. R. 26(A).  Doc. 5-3, pp. 72-74.  On May 5, 2014, Banks filed a motion for reconsideration. Doc. 5-3, pp. 75-94, 217. On May 8, 2015, the state court of appeals denied Banks's motion for enlargement of time to file a motion for reconsideration (Doc. 5-3, p. 95) and, on June 16, 2014, the state court of appeals denied Banks's motion for reconsideration (Doc. 5-3, pp. 96-97).

On June 4, 2014, Banks, acting *pro se*, filed a notice of appeal with the Supreme Court of Ohio from the court of appeals' April 21, 2014, judgment entry affirming the trial court's denial of his motion for correction of sentence.  Doc. 5-3, pp. 98-109.   In his Memorandum in Support of Jurisdiction (Doc. 5-3, pp. 110-136), Banks raised three propositions of law:

1. The trial court committed plain error crim R. 52(B) were the trial court fail to conduct a hearing to prior to sentencing the defendant to determine whether count, 1, 2, and 3 are allied offenses of similar import under State v. Johnson 126 Ohio St.2d 152 that rendered the court sentence void in violation of the defendant United States constitutional rights amendment 5, 6, and 14.

2. The trial court judgment entry of Sept. 12 2013 is not a final appealable order for the purpose of R.C. 2505.02 that would allow the appellate court subject matter jurisdiction over the case.

3. The trial court have no subject matter jurisdiction to impose a (15) year prison term upon the defendant for trafficking in drugs R.C. 2925.03 count 1, 2, and 3 without finding the defendant guilty of possession of drugs R.C. 2925.11 that rendered the court imposed sentence void violation of the defendant U.S. Constitutional rights amendment 5, 6, and 14.

Doc. 5-3, p. 111.  On September 24, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.  Doc. 5-3, p. 137.

**D.** **Application for delayed appeal**

On May 20, 2014, Banks, acting *pro se*, filed a notice of appeal/motion for delayed

appeal pursuant to App. R. 5(A) from his March 23, 2012, sentencing judgment.[7]  Doc. 5-3, pp.

138-158.  Banks sought to raise the following assignments of error:

> 1. Trial court committed plain error when the court imposed a (15) year
>    prison term on count 1-3 were the court lack subject matter jurisdiction
>    to impose a prison that rendered the court sentence void violation of the
>    defendant United States constitutional rights amendment 5, 6, and 14.
>
> 2. The trial court committed plain error in failing to conduct a hearing prior
>    to sentencing the defendant to determine whether count 1, 2 and 3 are
>    allied offenses of similar import R.C. 2941.25(A)( ) pursuant to State v.
>    Johnson 128 Ohio St3d. 153 that rendered the trial court sentence void
>    violation of defendant United States constitutional rights amendments 5, 6,
>    and 14.

Doc. 5-3, pp. 146-151.  Banks argued that he did not timely raise these assignments of error due

to ineffective assistance of counsel.  Doc. 5-3, pp. 143-145.

On June 5, 2014, the state court of appeals overruled Banks's motion, indicating that

Banks had already filed a timely appeal of the sentencing judgment from which he sought to

appeal and there was no provision for a second appeal from the same judgment.  Doc. 5-3, pp.

159-160.  On July 10, 2014, Banks filed a notice of appeal with the Supreme Court of Ohio from

the state court of appeals' June 5, 2014, judgment overruling his motion for leave to appeal.

Doc. 5-3, pp. 161-164.  In his Memorandum in Support of Jurisdiction (Doc. 5-3, pp. 165-183),[8]

Banks raised the following propositions of law:

> 1. R.C. 2953.03(A)(4) allow the defendant to appeal a void
>    sentence/judgment that is contrary to law were a criminal indictment fail
>    to state a criminal offense that deprive the trial court subject matter

---

[7] Portions of Banks's notice of appeal and motion for delayed appeal are not entirely legible due to slight fading of the print.  Doc. 5-3, pp. 138-158.

[8] Portions of Banks's memorandum in support of jurisdiction are not entirely legible due to slight fading of the print.Doc. 5-3, pp. 165-183.

jurisdiction in violation of defendant United States constitutional rights amendment 14.

2. Trial court committed plain error in failing to conduct a hearing prior to sentencing the defendant to determine whether the defendant was punish multiple times for the same criminal offense count 1, 2, 3 allied offenses of similar import R.C. 2941.25 that rendered trial court judgment void violation of the defendant United States constitutional rights amendment 5, 6 and 14 Double Jeopardy Clause.

Doc. 5-3, p. 166.   On November 5, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.  Doc. 5-3, p. 184.

**E.     Federal habeas Corpus**

On September 2, 2014, Banks, acting *pro se*, filed his petition for federal habeas corpus raising three grounds for relief.  Doc. 1.  The grounds for relief raised in Banks's petition are addressed below in Section III(C).

On June 25, 2015, Banks filed a motion for stay and abeyance in order to return to state court to exhaust a *new* claim not raised in his petition.  Doc. 14.  Banks's motion for stay and abeyance is addressed below in Section III(D).

## III.     Law and Analysis

**A.     Standard of Review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.[9]  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).   In particular, the controlling AEDPA provision states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

---

[9] The AEDPA statute of limitations for filing a petition for a writ of habeas corpus is one year and it begins to run on the date judgment became final. 28 U.S.C. § 2244(d)(1).  The statute of limitations has not been raised as an issue in this case.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.     Exhaustion and procedural barriers**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

When a petitioner fails to exhaust available state remedies, the entire petition may be dismissed without prejudice or, under certain limited circumstances, a court may grant a stay to allow the petitioner to return to state court to exhaust his state remedies.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).  A "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."  *Id*.  Further, even if "good cause" is shown, before granting a stay a court must consider whether the unexhausted claims are potentially meritorious and whether the petitioner did not engage in dilatory litigation tactics.  *Id*. at 277-278.

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his

claim to the appropriate state court."[10] *Id.*  Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also  Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is

---

[10] In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.

'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## C.  Grounds for Relief

### 1.  Ground One

Ground One: The testimony and evidence did not support a finding that the defendant was a major drug trafficker benefiting financially from the transaction and deserving of the sentence imposed.

Doc. 1, p. 5.

Respondent contends that Ground One fails to state a federal constitutional claim, is not cognizable in federal habeas review, and is procedurally defaulted.  Doc. 5, pp. 14-15, 20-21. Although not clear in his Petition, in his Traverse, Banks appears to contend that Ground One is a claim that the trial court improperly imposed consecutive sentences.  Doc. 17, pp. 2-4.

In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans*, 228 F.3d at 681. This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin*, 811 F.2d at 324-325; *Prather v. Rees*, 822 F.2d at 1421.   Moreover, "[i]ssues not presented at each and every level cannot be considered in a federal habeas corpus petition."  *Baston*, 282 F.Supp.2d at 661.

Banks did not fairly present his claim in Ground One as a federal constitutional claim nor did he present his claim in Ground One at each level in state court.  The claim in Ground One was not presented to the state court of appeals.  Thus, since Banks did not present Ground One to the state court of appeals, said claim is not properly before this Court and should be dismissed.

Even if the Court were to conclude that Ground One was fairly presented to the state court of appeals and the Supreme Court of Ohio based on Banks's presentation of his first

assignment of error to the state court of appeals[11] and his arguments presented to the Supreme Court of Ohio,[12] his claim in Ground One is not based on an alleged violation of federal constitutional law.  Rather, liberally construing his *pro se* petition to include a claim that the trial court improperly sentenced him to consecutive sentences, his claim is a state law claim. However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 20*08) ("A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." ).

"A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action." *Garrett v. Miller*, 2012 WL 3989022, *3-4 (N.D. Ohio Aug. 13, 2*012), *report and recommendation adopted*, 2012 WL 3989004 (N.D. Ohio Sept. 11, 2012) (citing *Howard v. White,* 2003 WL 22146139, at *2 (6th Cir. Sept.16, 2003)*; Kipen v. Renico,* 2003 WL 21130033 (6th Cir. May 14, 2003)*; Terry v. Trippett,* 62 F.3d 1418, 1995 WL 469424, at *1 (6th Cir.1995) (TABLE, text in WESTLAW) (citing *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988) (per curiam)). Further, a trial court's imposition of consecutive sentences does not implicate federal constitutional concerns.  *See Oregon v. Ice*, 555 U.S. 160, 171 (2009) (consecutive sentences may be imposed without implicating concerns

---

[11] In the state court of appeals, in his first assignment of error, Banks argued, "The trial court improperly sentenced the defendant when the trial court ordered consecutive sentences for each count of the indictment."  Doc. 5-2, pp. 70-73.

[12] In the Supreme Court of Ohio, in Proposition of Law No. 1, Banks argued, "The testimony and evidence did not support a finding that the Defendant was a major drug trafficker benefiting financially from the transactions and deserving of the sentence imposed" (Doc. 5-2, pp. 221-222) and, in Proposition of Law No. 2, Banks argued, "Ohio statutes support a sentence consistent with sentences imposed for similar crimes committed by similar offenders which did not happen in this instance case" (Doc. 5-2, pp. 222-224).

under the Sixth Amendment); *see also Wilkins v. Warden, Chillicothe Correctional Inst.*, 2010 WL 5795505, * 19 (S.D. Ohio Sept. 2, 2*010), *report and recommendation adopted*, 2011 WL 549916 (S.D. Ohio Feb. 8, 2011) (indicating that "the Supreme Court has made it clear that consecutive sentences may be imposed without implicating any concerns under the Sixth Amendment.") (citing *Ice*, 555 U.S. 160); *see also Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (concluding that a petitioner's challenge to the aggregation of several sentences involved a matter of state law and was not cognizable in the federal habeas proceeding).  In light of the foregoing, Banks's state law sentencing claim, even if properly presented, is not cognizable in federal habeas review.[13]

Accordingly, the undersigned recommends that the Court **DISMISS** Ground One because it was not fairly presented to the state courts at every level and/or does not allege a violation of federal constitutional law and therefore is not cognizable in federal habeas review.

### 2. Ground Two

Ground Two: Ohio statutes support a sentence consistent with sentences imposed for similar crimes committed by similar offenders which did not happen in this instant case.

Doc. 1, p. 7.

Respondent contends that Ground Two also fails to state a federal constitutional claim, is not cognizable in federal habeas review, and is procedurally defaulted.  Doc. 5, pp. 16, 21-23.

As with Ground One, Banks did not fairly present his claim in Ground Two as a federal constitutional claim nor did he present his claim in Ground Two at each level in state court.  The claim in Ground Two was not presented to the state court of appeals.  Thus, since Banks did not

---

[13] Banks has not shown that the alleged sentencing error amounted to "a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution."  *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

present Ground Two to the state court of appeals, Ground Two is not properly before this Court and should be dismissed.

Even if the Court were to conclude that Ground Two was fairly presented to the state court of appeals and the Supreme Court of Ohio based on Banks's presentation of his eighth assignment of error to the state court of appeals[14] and his arguments presented to the Supreme Court of Ohio,[15] his claim in Ground Two is not based on an alleged violation of federal constitutional law.  Rather, like Ground One, Ground Two is a claim that the trial court improperly sentenced Banks under state law.   As discussed above, said claim is not cognizable in federal habeas review.[16]

Additionally, even if Ground Two were properly before this Court as a federal claim, the claim would fail.  The Eighth Amendment contains only a "narrow proportionality principle" but "does not require strict proportionality between crime and sentence."  *U.S. v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011) (citing *Harmelin v. Michigan*, 501 U.S. 957, 996, 1001 (1991)(Kennedy, J., concurring). "[O]nly an extreme disparity between crime and sentence offends the Eighth Amendment."  *Moore*, 643 F.3d at 454 (quoting *United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003)).  Banks has not demonstrated an extreme disparity between his conviction for the three separate offenses and the sentence imposed.  Further, Banks does not

---

[14] In the state court of appeals, in his eighth assignment of error, Banks argued, "During sentencing, the trial court stated that 'As a result, the Court has looked at the factors and presumptions under Revised Code Section 2929.13(D).  And after consideration of all factors, the court finds that a prison term is not only consistent but mandatory in this case, but is consistent with the purposes and principals of felony sentencing under Revised Code Section 2929.11 . . .' (Sentencing Tr. p18-19)  Said statement is in error and therefore the sentencing should be void."  Doc. 5-2, p. 82.

[15] *See* FN 12 above.

[16] Additionally, among the findings made by the trial court when imposing consecutive sentences, the trial court found ". . . consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public."  Doc. 5-2, p. 49.   The state court of appeals concluded that the record supported these findings.  Doc. 5-2, p. 209.  Thus, Banks's claim that the trial court did not engage in proportionality analysis required by the statute (Doc. 17, pp. 5-6) is without merit.

claim that his sentence exceeded the statutory maximum and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *Moore*, 643 F.3d at 455 (quoting *Layne*, 324 F.3d at 474).  Finally, to the extent that Banks claims that his sentence was disproportionate to the sentence imposed on others involved in the commission of the crime, his claim also fails, because "comparative proportionality is not mandated by the Constitution."  *See Layne*, 324 F.3d at 474 (relying on *Pulley v. Harris*, 465 U.S. 37, 43-45 (1984)).

Accordingly, for the reasons set forth above, the undersigned recommends that the Court **DISMISS** Ground Two because it was not fairly presented to the state courts at every level and/or does not allege a violation of federal constitutional law and therefore is not cognizable in federal habeas review.

### 3.  Ground Three

Ground Three: The Petitioner was deprived of his right to effective assistance of counsel by retained counsel(s), in both direct appeals in the court of appeals, Third Appellate District, and Ohio Supreme Court.

Doc. 1, p. 8.

Respondent contends that Banks's claims of ineffective assistance of appellate counsel in Ground Three were not presented to the state courts in the same manner as he has presented them to this Court; his claim of ineffective assistance of counsel with respect to his appeal to the Supreme Court of Ohio is not cognizable; and/or his claims of ineffective assistance of appellate counsel are procedurally defaulted.  Doc. 5, pp. 16-18, 23-24.

In his seventh assignment of error presented to the state court of appeals, Banks argued that his trial counsel was ineffective for failing to introduce evidence that the drug supplier, Rachel Eckert, was residing in his home and for failing to enter a continuing objection to the assistant prosecutor's statements during closing argument which Banks argued suggested other

23

prior acts. Doc. 5-2, pp. 80-82.  Banks's original direct appeal to the Supreme Court of Ohio did

not include claims of ineffective assistance of trial counsel or appellate counsel.  Doc. 5-2, pp.

216-226.  Following the Supreme Court of Ohio's decision declining jurisdiction, Banks filed a

*pro se* notice of appeal and motion for delayed appeal in the Supreme Court of Ohio arguing that

appellate counsel representing him in his appeal to the Supreme Court of Ohio was ineffective

for not preserving all assignments of error raised in his direct appeal.  Doc. 5-2, pp. 290-291.

 In his Petition, Banks does not specify what action or conduct by his appellate counsel

constitutes allegedly ineffective assistance of counsel.  Doc. 1, pp. 8-10.   Yet, in his Traverse,

Banks claims that his trial counsel and appellate counsel were ineffective for failing to argue that

electronic surveillance conducted in his case was unlawful and/or that the prosecution failed to

disclose that the law enforcement agencies conducting the surveillance did not comply with

statutory requirements in obtaining a wiretap authorization.  Doc. 17, pp. 6-13.  This claim was

not presented in his Petition nor was it presented to the state courts for adjudication.  Since

Banks seeks to have this Court adjudicate a ground for relief first presented in his Traverse rather

than his Petition, the Court need not address the claim.[17]  *See Tyler v. Mitchell*, 416 F.3d 500,

504 (6th Cir. 2005).

 Additionally, Banks has failed to present or argue any other claims of ineffective

assistance of counsel and/or argue why his claims of ineffective assistance of appellate counsel

are cognizable and/or are not procedurally defaulted.  Thus, any such arguments are waived.[18]

---

[17] As discussed below, the undersigned also recommends that the Court deny Banks's request for a stay and
abeyance to pursue this new claim.

[18] Even if not waived or not procedurally defaulted, Banks's claim that his appellate counsel representing him in his
appeal to the Supreme Court of Ohio was ineffective (Doc. 5-2, pp. 290-291) would not constitute a basis for federal
habeas relief.  *See  Pennsylvania v. Finley*, 481 U.S. 551, 555 (1985) (constitutional right to counsel extends only to
the first appeal of right); *Wainwright v. Torna*, 455 U.S. 586 (1982) (where a petitioner has no constitutional right to
counsel, he cannot be deprived of the effective assistance of counsel); *Barkley v. Konteh*, 240 F.Supp. 2d 708, * 714
(N.D. Ohio 2002) (Petitioner had "no constitutional or state right to counsel on his discretionary appeal to the Ohio
Supreme Court."

*See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." ) (internal citations omitted).

For the reasons set forth above, the undersigned recommends that the Court **DISMISS** Ground Three because it is not cognizable and/or is procedurally defaulted.

### D.    Motion for Stay and Abeyance

Having already requested (Doc. 8) and been denied the ability to dismiss his petition without prejudice to pursue a claim regarding an alleged improper use of surveillance evidence at trial (Doc. 12),[19] on June 25, 2015, Banks filed a Motion for Stay and Abeyance for the purpose of exhausting a claim regarding the use of surveillance evidence at trial.  Doc. 14.   Respondent has opposed Banks's motion.  Doc. 16.

Under *Rhines v. Weber*, 544 U.S. 269 (2005), a district court has discretion to stay a mixed petition, i.e., a petition containing exhausted and unexhausted claims.  As stated in *Rhines*, however, "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings [and] . . . undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his habeas petition." *Rhines*, 544 U.S. at 277.  Thus, stay and abeyance is only appropriate in limited instances such as "when the district court determined there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the

---

[19] As noted above, on May 18, 2015, the undersigned issued an interim report and recommendation recommending denial of Banks's request to dismiss his petition without prejudice. Doc. 11. Banks filed no objection.  On June 15, 2015, the Court adopted the interim report and recommendation and denied Banks's motion to dismiss his petition without prejudice.  Doc. 12.

district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id.*

The claim that Banks contends is unexhausted was not included in his Petition nor has Banks sought to amend his Petition.  As set forth above, the three grounds for relief included in Banks's Petition should be dismissed as not cognizable and/or procedurally defaulted.  Accordingly, since there are no claims remaining, Banks's motion for a stay and abeyance to pursue a claim not included in his Petition should be **DENIED**.

Assuming *arguendo* that Banks had included in his Petition an unexhausted claim regarding the use of surveillance evidence, Banks has not demonstrated entitlement to a stay and abeyance under *Rhines*.  As set forth above, a petitioner must demonstrate good cause for his failure to previously raise a claim in state court.  *Rhines*, 544 U.S. at 277.   Petitioner claims that he only recently discovered that surveillance evidence used at trial was obtained in violation of federal and state statutes.  Doc. 14, p. 1.  However, as previously found when ruling on Banks's motion to dismiss his petition without prejudice, Banks was aware of the use of surveillance records at the time of his trial in 2012.  Doc. 11, p. 5.  Further, to the extent that Banks claims that his review of the state trial court docket sheet provided by Respondent as part of this habeas proceeding caused him to realize the existence of a potential claim not previously presented in state court, as previously found, Banks has not shown that the information, i.e., a public docket sheet, was not previously known to or obtainable by him.  Doc. 11, p. 5.

Based on the foregoing, even if Banks's Petition were deemed a mixed petition, the undersigned finds that Banks would be unable to demonstrate good cause for his failure to

previously raise a claim regarding the use of surveillance evidence at this trial.[20]  Thus, a stay and abeyance would not be warranted.

Accordingly, for the reasons set forth herein, the undersigned recommends that the Court **DENY** Banks's motion for a stay and abeyance (Doc. 14).

### IV.   Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS** Banks's federal habeas petition (Doc. 1) and **DENY** Banks's motion for stay and abeyance (Doc. 14).

November 4, 2015

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[20] Banks's reliance upon an April 7, 2015, letter from Judge Katz sent in response to Banks's March 11, 2015, inquiry to argue that the electronic surveillance was somehow improper is meritless.  Doc. 14-1, Doc. 14-2.  Since Banks was inquiring into a state case, Judge Katz referred Banks to state court and/or the attorney who represented Banks in his criminal case. Doc. 14-2.